UNITED STATES, Appellee

v.

William C. BRAGG, Staff Sergeant
U.S. Marine Corps, Appellant

No. 07-0382

Crim. App. No. 200600228

United States Court of Appeals for the Armed Forces

Argued February 26, 2008

Decided May 27, 2008

BAKER, J., delivered the opinion of the Court, in which EFFRON,
C.J., and ERDMANN, STUCKY, and RYAN, JJ., joined.


Counsel

For Appellant:  Major Brian L. Jackson, USMC (argued);
Lieutenant Commander Ricardo A. Berry, JAGC, USNR.


For Appellee:  Colonel Louis J. Puleo, USMC (argued); Captain
Geoffrey S. Shows, USMC, and Commander Paul C. LeBlanc, JAGC,
USN.



Military Judge:  R. S. Chester



THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Bragg, No. 07-0382/MC

    Judge BAKER delivered the opinion of the Court.

    Appellant was tried by a general court-martial convened

with members at Marine Corps Recruit Depot, San Diego,

California.  Contrary to his pleas, he was found guilty of

violating a lawful general order, rape, indecent assault,

indecent language, and adultery, all in violation of Articles

92, 120, and 134, Uniform Code of Military Justice (UCMJ), 10

U.S.C. §§ 892, 920, 934 (2000).  The court sentenced Appellant

to a dishonorable discharge, confinement for five years,

forfeiture of all pay and allowances, and reduction to the

lowest enlisted grade.  The convening authority approved the

sentence as adjudged, but the United States Navy-Marine Corps

Court of Criminal Appeals reduced Appellant's period of

confinement to four years, eleven months.  United States v.

Bragg, No. NMCCA 200600228, 2007 CCA LEXIS 44, at *19, 2007 WL

1704149, at *7 (N-M. Ct. Crim. App. Feb. 21, 2007)

(unpublished).  This Court granted review of the following

question:

    WHETHER THE LOWER COURT ERRED IN UPHOLDING THE MILITARY
    JUDGE'S DENIAL OF THE CHALLENGE FOR CAUSE OF LIEUTENANT
    COLONEL [W].

Based on the reasoning below, we hold that the lower court

erred.

BACKGROUND

Appellant was convicted of committing rape, and other inappropriate acts against two female high school students while serving as a recruiter for the United States Marine Corps. During voir dire of the court-martial members, one member, Lieutenant Colonel (LtCol) W, volunteered that he had learned information about the case outside of the trial proceedings. LtCol W stated that in his former role as the deputy assistant chief of staff for recruiting, he "usually" read the "relief for cause" (RFC) packages that would have been submitted for any recruiters accused of misconduct under his jurisdiction. While he lacked specific memory of most of the particulars of the case, LtCol W was able to recall several facts, including the nature of the offense, the general identity of the victim, and investigatory measures undertaken by the police. LtCol W stated that he was unsure whether he had gained his knowledge of the case through reading the RFC packet or through reading the newspaper. However, after recalling what he knew of the case, he later stated, "[s]o, based off that, I believe I read the investigation as opposed to reading the newspaper accounts and all that kind of stuff."

When asked whether he would have made a recommendation on the case, LtCol W equivocated, then stated, "I probably would have recommended relief if it had come up in front of me."

3

LtCol W also stated that he would have read any RFC packets submitted before July 17, 2003. The offenses at issue in this case were committed between April 3, 2003, and April 10, 2003, and charges were preferred on May 28, 2003. In addition to volunteering the foregoing information, LtCol W also stated that he could be impartial in sitting as a member of the court-martial.

The military judge denied defense counsel's challenge of LtCol W for cause, finding that LtCol W's "answers and candor . . . and body language" suggested that he would be impartial, and decide the case solely on the evidence presented in court. As a result, defense counsel chose to exercise their peremptory challenge against LtCol W, rather than another member, Colonel C.

## DISCUSSION

An accused "has a constitutional right, as well as a regulatory right, to a fair and impartial panel." United States v. Wiesen, 56 M.J. 172, 174 (C.A.A.F. 2001). Rule for Courts-Martial (R.C.M.) 912(f)(1)(N) requires that a member be excused for cause whenever it appears that the member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." See United States v. Miles, 58 M.J. 192, 194 (C.A.A.F. 2003). While this rule applies to both actual and

4

implied bias, "[t]he focus of this rule is on the perception or appearance of fairness of the military justice system." United States v. Dale, 42 M.J. 384, 386 (C.A.A.F. 1995). This Court gives the military judge "great deference when deciding whether actual bias exists because it is a question of fact, and the judge has observed the demeanor of the challenged member." United States v. Napolitano, 53 M.J. 162, 166 (C.A.A.F. 2000). A military judge is afforded less deference when we review a challenge for cause based on implied bias because the issue is "objectively viewed through the eyes of the public," id. (citation and quotation marks omitted), "focusing on the appearance of fairness," United States v. Rome, 47 M.J. 467, 469 (C.A.A.F. 1998) (citation omitted). Thus, "[i]ssues of implied bias are reviewed under a standard less deferential than abuse of discretion but more deferential than de novo." Miles, 58 M.J. at 195 (citation and quotation marks omitted). However, "[a] military judge who addresses implied bias by applying the liberal grant mandate on the record will receive more deference on review than one that does not." United States v. Clay, 64 M.J. 274, 277 (C.A.A.F. 2007). "We do not expect record dissertations but, rather, a clear signal that the military judge applied the right law. While not required, where the military judge places on the record his analysis and application

5

of the law to the facts, deference is surely warranted." Id. (citation and quotation marks omitted).

In making judgments regarding implied bias, this Court looks at the totality of the factual circumstances. United States v. Strand, 59 M.J. 455, 459 (C.A.A.F. 2004). "Implied bias exists when, regardless of an individual member's disclaimer of bias, most people in the same position would be prejudiced [i.e., biased]." Napolitano, 53 M.J. at 167 (citation and quotation marks omitted). In this case the member indicated that he was aware of information about the case not available to the other members and from a source not readily available to others. Moreover, LtCol W, a senior member on the panel, suggested that prior to trial, it was likely that he would have been in a position to recommend, and may have recommended adverse administrative action against Appellant, for conduct forming the basis of the charges before the court-martial.

The purpose of voir dire and challenges is, in part, to ferret out facts, to make conclusions about the members' sincerity, and to adjudicate the members' ability to sit as part of a fair and impartial panel. However, the text of R.C.M. 912 is not framed in the absolutes of actual bias, but rather addresses the appearance of fairness as well, dictating the avoidance of situations where there will be substantial doubt as

6

to fairness or impartiality.  Thus, implied bias picks up where actual bias drops off because the facts are unknown, unreachable, or principles of fairness nonetheless warrant excusal.

In the present case, for example, the military judge was not ultimately compelled to explore the capacity of LtCol W to recommend administrative relief in one context, yet keep an open mind about Appellant's conduct when applying a criminal standard of review as a court-martial member.  Nor, in the context of implied bias, must a military judge doubt the sincerity or veracity of a member's statements -- and we do not doubt LtCol W's integrity -- that he could evaluate the evidence with an open mind, in order to nonetheless conclude that the member should not sit.  In this sense, it is not always possible to resolve facts or determine credibility and still remove the perception of doubt as to whether a member should sit.  Implied bias and the liberal grant mandate allow a military judge to uphold the letter and spirit of R.C.M. 912 without at the same time questioning a member's statement that he can sit with an open mind.  See United States v. Townsend, 65 M.J. 460, 463 (C.A.A.F. 2008) (implied bias determinations made "despite a disclaimer").

The liberal grant mandate and principles of implied bias also remove the necessity of reaching conclusions of fact that

are beyond the capacity of the member to recall.  Thus, the military judge could not determine whether or not LtCol W actually recommended relief -- because LtCol W could not remember if he did.  But if LtCol W believed he did, and the facts indicated he might well have, a substantial doubt is nonetheless raised as to fairness and impartiality.  That is because no matter how sincere the particular member, we have substantial doubt that it is fair for a member to sit on a panel where that member has likely already reached a judgment as to whether the conduct in question has occurred.  Such a conclusion is compounded when it is likely that the same member has reached such a conclusion based on facts contained outside the record.

The liberal grant mandate exists for cases like this. Here, the record reflects that LtCol W might well have recommended relief for cause; and even if he did not, he stated that he would have done so.  Viewed objectively, we conclude that a member of the public would have substantial doubt that it was fair for this member to sit on a panel where that member had likely already reached a judgment as to whether the charged misconduct occurred.  This perception of unfairness is compounded when that member has likely reached such a conclusion based on information gained prior to trial.

## DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is reversed and the findings and sentence are set aside.  The record of trial is returned to the Judge Advocate General of the Navy.  A rehearing may be ordered.